**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Victor LEONG et al.,
Defendants-Appellants.**

**Nos. 973, 981 and 972, Dockets 76–1001,
76–1006 and 76–1016.**

United States Court of Appeals,
Second Circuit.

Argued April 29, 1976.

Decided June 23, 1976.

Robert B. Fiske, U. S. Atty., S. D. N. Y., Alan R. Kaufman, Asst. U.S. Atty., New York City, of counsel (John C. Sabetta, Asst. U.S. Atty., New York City, on the brief), for plaintiff-appellee.

Henry J. Boitel, New York City, for defendant-appellant Leong.

Jerald Rosenthal, New York City (Irving Katcher, New York City, on the brief), for defendant-appellant Olsen.

Gasthalter & Pollok, New York City (Edward Gasthalter, New York City, of counsel), for defendant-appellant Wong.

Before LUMBARD, WATERMAN and MESKILL, Circuit Judges.

WATERMAN, Circuit Judge:

Victor Leong, Ernst Olsen and Wong Chou Shek (Wong) were convicted of having violated the federal narcotics laws after a four-weeks jury trial before Judge Robert J. Ward of the United States District Court for the Southern District of New York. They seek reversal of their convictions. Appellants were charged, along with twenty-two others, with conspiracy to export heroin from the Asian mainland into the United States and to possess and distribute heroin in the United States, in violation of 21 U.S.C. §§ 846 and 963. Appellants, and one other of the twenty-two, were tried together. The fourth defendant was acquitted. Wong was charged only in the conspiracy count, but Olsen and Leong were also separately charged with the substantive offenses of possessing heroin with intent to distribute the same in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A).

The jury returned verdicts of guilty against Leong, Olsen and Wong on all counts in which they were charged. Leong was sentenced to concurrent sentences of three years' imprisonment, to be followed by three years' special parole, Olsen to two concurrent fifteen year terms of imprisonment, to be followed by three years' special parole, and Wong to five years' imprisonment, also to be followed by three years' special parole.

The facts which the Government presented to support the charges underlying the indictment are complex and need not be recounted in their full detail in order to construct the necessary backdrop for the numerous arguments framed by appellants in support of reversal. Essentially the Government charged that Leong, Olsen and Wong were participants in an international narcotics conspiracy in which some 200 pounds of pure heroin were smuggled from Bangkok, Thailand to New York City and Vancouver, British Columbia, and thereafter distributed in New York, Vancouver and San Francisco. Ernst Olsen, a key participant in the smuggling operation, was a Danish national who commenced the narcotics activities charged in the present indictment when he met a major Asian supplier, a Wong Shing Kong, in Bangkok in the spring of 1971. Olsen arranged for and facilitated the transport of heroin to North America by sea and by air from several Asian suppliers. Additionally, he himself traveled to North America at various times to insure proper recovery of the narcotics shipments and to assist in the distribution of them on this continent.

Wong Chou Shek, owner of a gambling house on the West Coast, was the major distributor of the smuggled heroin in San Francisco. In the course of arranging for the delivery and sale of heroin in that area and for the transfer of money to the East Coast suppliers and to the Asian exporters, he employed one Pon Yóu Wing to obtain heroin from Wong's connection in New York, one Lam Kin Sang (Lam), and to deliver heroin to customers found by Wong. Wong also traveled to Vancouver on at

least one occasion and introduced Lam to a large new customer in that city.

Victor Leong, a customer of Lam, purchased a half-pound of heroin from the latter after the two met at a gambling house in Manhattan. Leong agreed to pay Lam out of the proceeds he expected to receive on the resale of the drugs in Vancouver. He later told Lam that he was going to Vancouver to look for more customers, and Lam agreed to supply him with heroin for any potential buyers he might locate. Leong did thereafter contact Lam to tell him of a new Vancouver customer Leong had acquired, but no deal relative to this new customer was ever consummated between them.

■ Appellants raise eight basic claims on appeal. Only two of the eight are worthy of any real discussion. First, Leong and Wong contend that while the indictment charged a single conspiracy, the proof at trial established the improper joinder of what in fact were two discrete conspiracies, thus creating a material variance between the indictment and the proof. Specifically, they each argue that the shipments of heroin from Bangkok to Vancouver and those from Bangkok to the United States were two distinct operations, with appellant Olsen providing the only link between the two.

The evidence however, contrary to appellants' claims, quite clearly established one conspiracy which extended from May, 1971 to August, 1972. The structure of that conspiratorial operation is a common one not unfamiliar to this court. Supplier-exporters, importers, distributors and purchasers were all involved here in what has been described as a vertically integrated looseknit combination. *See United States v. Bynum,* 485 F.2d 490, 495 (2d Cir.1973), *vacated and remanded on other grounds,* 417 U.S. 903, 94 S.Ct. 2598, 41 L.Ed.2d 209 (1974). While there were indeed two points of importation into North America, Vancouver and New York City, the major suppliers in Bangkok, and the methods of shipment and distribution to the two North American cities, were virtually identical. Further-

more, the distributors and purchasers of heroin in the United States and Canada were all interrelated. For instance, the first shipment of heroin to reach Vancouver was part of the shipment delivered in New York to Olsen, Lam and a third co-conspirator, Wong Shing Kong, and which was then taken by Olsen to Vancouver for distribution. Furthermore, in December, 1971, Wong, generally supplied from New York, flew from San Francisco to join Lam in Vancouver where he introduced Lam to a large new customer, Paul Jang. Lam contacted Wong Shing Kong, who had gone to Vancouver from New York, to obtain a sample of heroin for Jang, and a sale was thereafter arranged between Lam and Jang.

Quite obviously the narcotics operation here is readily distinguishable from that in *United States v. Bertolotti,* 529 F.2d 149 (2d Cir.1975), a decision heavily relied upon by appellants, for in *Bertolotti* the court found that the single conspiracy which was charged in the indictment was actually an improper consolidation of at least four separate and unrelated criminal ventures, some of which, but not all, involved narcotics, and others of which involved non-drug transactions such as cash theft. In *Bertolotti* the court found lacking that "mutual dependence and assistance" among the spheres of the operation which exists here and which existed in *United States v. Tramunti,* 513 F.2d 1087 (2d Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975), and also found lacking those facts which are obviously present here which lend themselves to a "permissible inference . . . that each actor was aware of his part in a larger organization where others performed similar roles equally important to the success of the venture," as in *United States v. Sperling,* 506 F.2d 1323 (2d Cir.1974), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975). Both Wong and Leong were associated with the Vancouver participants, and though Leong made but one purchase of heroin from Lam in New York City, he expressed to Lam his desire to purchase more heroin with the intent to distribute in Vancouver the drugs so pur-

chased. Even though Wong and Leong may not have known the identity of some of the suppliers, and even some of the distributors, it is reasonable to infer that each knew that his supply was only a part of the overall quantity of narcotics which had been imported from Bangkok into New York and Vancouver. *See Blumenthal v. United States,* 332 U.S. 539, 554–55 n. 14, 68 S.Ct. 248, 92 L.Ed. 154 (1947).

As we said in *United States v. Ortega-Alvarez,* 506 F.2d 455, 457 (2d Cir.1974):

> It is firmly settled in this Circuit that when large quantities of heroin are being distributed, each major buyer must be presumed to know that he is part of a wide-ranging venture, the success of which depends on the performance of others whose identities he may not even know.

*See also United States v. Calabro,* 467 F.2d 973, 982–83 (2d Cir.1972), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1357, 35 L.Ed.2d 587 (1973); *United States v. Mallah,* 503 F.2d 971 (2d Cir.1974), *cert. denied,* 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975).

For his second claim, appellant Leong contends that the Government failed to establish venue within the Southern District of New York as to the substantive charge against him, that he possessed heroin with intent to distribute it. He was charged with possessing with intent to distribute approximately 250 grams of heroin in the Southern District on or about September 16, 1971. At trial, the Government's case against Leong was developed through the testimony of Lam Kin Sang. Lam testified that he received a shipment of heroin from Olsen in August 1971 which he then stored at his home in Flushing, Queens, and that in mid-September, 1971, Lam met Leong at the Tung On Association Gambling House in Manhattan where Leong agreed to purchase the half-pound of heroin. At this time Leong was staying in the George Washington Hotel in Manhattan. Lam stated that he then transferred the heroin to Leong, but there was no testimony as to the location where this transfer took place or where Leong stored the drugs after he received them. This rather careless failure of the Government to pinpoint the locus of the transaction was not discovered or noted by anyone until the jury, in the course of its deliberations, requested information concerning the date of the deal and the place where the drugs were transferred. In attempting to comply with the jury's request, the parties reviewed the record. Finding no direct testimony on the point, Leong's counsel then moved for a directed judgment of acquittal. Judge Ward reserved decision on the motion pending the return of the jury's verdict on the count. The jury found Leong guilty of the crime charged, and at the time of Leong's sentencing, Judge Ward denied Leong's motion on the merits, and also on the further ground that the motion had been untimely made, and hence that any claim that the Government had failed to prove the locus of the crime had been waived.

■ At the outset, it should be noted that the Government had the burden of proving the venue of Leong's offense by a preponderance of the evidence only, and did not need to establish it beyond a reasonable doubt. *United States v. Jenkins,* 510 F.2d 495, 498 (2d Cir.1975). We agree with Judge Ward that the circumstantial evidence presented by the Government satisfied that burden. Leong was residing at a Manhattan hotel at the time of the sale, and this fact, coupled with Lam's testimony that he met Leong and arranged for the sale at the Manhattan gambling club where his narcotics deals were arranged during that period, justified the belief that Leong had purchased and stored the heroin in Manhattan. Anyway, Leong's residency in Manhattan would be sufficient circumstantial evidence, if not of the receipt of the heroin in the Southern District, certainly of his possession of it in that District. As we are thus disposing of appellant's arguments on the merits, we need not reach the additional ground stated by the judge below and advanced by the Government on appeal to the effect that appellant's motion was untimely and he had waived his venue objection by not moving with reference to it earlier.

■ Appellants' remaining arguments require only brief mention. Prior to trial Olsen filed a motion to dismiss the indictment as to him because he alleged that prosecution under it would place him in double jeopardy. He moved for a severance. The trial judge reserved decision on the motion to dismiss pending introduction of evidence, and denied the motion for a severance. During trial, in the presence of the jury, while cross-examining a Government witness, Olsen's counsel sought to support his double jeopardy claim by asking about a narcotic transaction beyond the scope of the present case; and, a Government objection to the line of inquiry having been made, counsel then sought to establish its relevancy and spoke of "the three indictments." The court overruled the Olsen motion to dismiss the indictment; and Olsen's principal argument on appeal is that his conviction in this case was based on crimes for which he had already been tried and convicted, and therefore that the present conviction must be reversed on double jeopardy and collateral estoppel grounds. However, the conspiracy for which Olsen was convicted here involved a different period of time, to wit, from May, 1971 to August, 1972, from the time period of the conspiracy for which he had been convicted previously in the Eastern District, to wit, a period from January, 1969 to June, 1970; the operations were different; and, aside from three persons who were involved in both conspiracies, the participants were different. *See United States v. Aviles,* 274 F.2d 179, 193–94 (2d Cir.), *cert. denied,* 362 U.S. 974, 80 S.Ct. 1057, 4 L.Ed.2d 1009 (1960). We find no error in these rulings.

■ After this improper revelation that there were other indictments pending, Leong and Wong who were not named defendants therein, claimed they were prejudiced before the jury and they moved for a severance or for a mistrial. Their motions were promptly denied, and this ruling is the basis of one of the points they raise on appeal. Judge Ward pointed out to them that it was the Government which objected to Olsen's counsel's line of questioning and that neither Leong nor Wong voiced any objection until after the Government had objected. It may well have been that at this point the counsel for Leong and the counsel for Wong, who had been silent, were hoping that the questioning by Olsen's counsel might possibly redound to the benefit of their clients, and they seized upon Olsen's counsel's remark. In any event, Judge Ward followed his adverse ruling on the Leong and Wong motions with a curative instruction to the jury. His ruling denying the motions and his instruction to the jury were entirely correct.

■ Leong also asserts that the trial court erroneously failed to conduct a hearing as to whether certain evidence admitted at trial was tainted by illegal seizures. This assertion is without merit, for Leong failed to sustain his initial burden of making some showing of the existence of taint.

We note three further arguments in which error is claimed: that there was error in the trial judge's charge to the jury as to Leong; that the Government committed reversible error in the opening and closing statements made to the jury; and that there was reversible impropriety in the Government's reading to the jury of a redacted version of an agreement between Lam and the Government. We find these to be frivolous and to deserve no discussion.

We affirm all judgments of conviction.