UNITED STATES of America, Appellee,

v.

Francisco Adriano ARMEDO–SARMIEN-
TO, aka Eduardo Sanchez, aka Pacho el
Mono, aka Elkin, aka Francisco Velez, et
al., Defendants-Appellants.

Nos. 1276–1282, 1284 and 1309, Dockets
76–1113, 76–1119, 76–1124, 76–1127
and 76–1148.

United States Court of Appeals,
Second Circuit.

Argued Aug. 20, 1976.

Decided Oct. 28, 1976.

Certiorari Denied March 7, 1977.
See 97 S.Ct. 1330, 1331.

Paul E. Warburgh, Jr., New York City, for defendant-appellant Francisco Adriano Armedo-Sarmiento.

Martin Gotkin, New York City (Gerald B. Lefcourt, Rachel H. Wolkenstein, Rosenthal & Herman, P. C., Gilbert S. Rosenthal, Abraham Wilson, Leonard J. Levenson, New York City, of counsel), for defendants-appellants Edgar Restrepo-Botero, Leon Velez and Olegario Montes-Gomez.

Frederick P. Hafetz, New York City (Goldman & Hafetz, New York City, of counsel), for defendants-appellants Libardo Gill and Carmen Gill.

Donald E. Nawi, New York City (Howard L. Jacobs, P. C., New York City, of counsel), for defendant-appellant Ruben Dario Roldan.

Leonard J. Levenson, New York City (Martin Gotkin, New York City, of counsel), for defendant-appellant William Rodriguez-Parra.

Louis A. Tirelli, Spring Valley, N. Y., on submission for defendant-appellant Jorge Gonzalez.

Daniel R. Murdock, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., Peter M. Bloch, Michael Q. Carey, Howard W. Goldstein, Rhea K. Neugarten, Martin B. McNamara, Frederick T. Davis, Asst. U. S. Attys., New York City, of counsel), for appellee.

Before VAN GRAAFEILAND, Circuit Judge, and KELLEHER * and GAGLIARDI,** District Judges.

VAN GRAAFEILAND, Circuit Judge:

Between 1971 and 1975, massive amounts of cocaine and marijuana were smuggled from Colombia, South America into the United States, much of it intended for distribution in New York City. In smaller

---

* Of the Central District of California, sitting by designation.

** Of the Southern District of New York, sitting by designation.

quantities, these drugs entered the country in such things as false-bottom shoes, suitcases, dog cages, hollowed-out-coat hangers and double-lined undergarments. Larger quantities came in by speedboat and in the false ceilings and walls of ocean-going shipping containers.

On April 30, 1975, following an intensive cooperative investigation by Federal and New York authorities, appellants and 29 others were indicted for conspiracy to import, possess and distribute cocaine in violation of 21 U.S.C. §§ 846 and 963.[1] They now appeal from judgments of conviction which followed a 14-week jury trial before Judge Cannella in the Southern District of New York.

Only 12 of the indicted defendants were tried, the 9 appellants and 3 others who were tried in absentia. The government's proof which consisted of wiretap recordings,[2] documentary evidence, surveillance reports and the testimony and admissions of accomplices was sufficient to establish each appellant's participation in the illegal venture. We move, therefore, directly to appellants' numerous other assertions of error.

*Multiple Conspiracies*

When a pattern of illegal activity persists over an extended period of time, with participants moving on and off the scene of action, it is sometimes difficult to establish that they are all part of a single conspiracy. *United States v. Borrelli*, 336 F.2d 376, 382–87 (2d Cir. 1964), *cert. denied*, 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965). It is not surprising, therefore, that appellants here argue the existence of three conspiracies, rather than one.

They contend that the first conspiracy covered the period from late 1971 until July 1973 and that, of the appellants, only Parra,

Gomez and Botero were involved therein. The second, they say, ran from May 1973 until early 1974, with Botero the only appellant involved in this segment. The third, according to appellants, was in existence only during the first ten months of 1974, and among the participants were appellants Sarmiento, the two Gills, Roldan and Gonzalez.

The nature of the government's proof did indeed differ with respect to each of these three periods. Testimony concerning the 1971–73 segment was given largely by Carmen Caban and Rita Ramos, barmaids, who became involved on both a "business" and personal basis with the drug dealers against whom they testified. The illegal importation taking place during 1973 was described chiefly by William Andries and Lionel Fernandez, drug couriers, whose deliveries were made primarily in the Miami, Florida area. Most of the surveillance and wiretapping took place during the third period. It is true, also, that the evidence connected a number of the alleged conspirators with but one of the three time segments, and the primary scene of operations for the second segment was different from that of segments one and three.

However, whether the evidence has established multiple conspiracies rather than a single one is ordinarily a question of fact for the jury, *United States v. Finkelstein*, 526 F.2d 517, 522 (2d Cir. 1975), *cert. denied*, 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976); and, accepting the proof in the light most favorable to the Government, *United States v. McCarthy*, 473 F.2d 300, 302 (2d Cir. 1972), we think it was sufficient to permit the jury to find the existence of but a single conspiracy. Evidence was introduced to show that the "brains" of the smuggling operation were

1. The indictment also charged the 38 defendants with conspiring to import and possess marijuana and, in a third count, charged two defendants with unlawful possession of firearms. The marijuana count was dismissed by the District Court for lack of proof of a conspiracy relating solely to marijuana, and the jury failed to agree on the third count.

2. Approximately 175 tape recordings were received in evidence. Although these recordings contain references only to such innocuous items as "things", "rounds", "cartons", "motors", "vials", "machines", "shirts", "suits and pants", "bibles", "pencils" and "automobiles", the jury was entitled to find that these were all code words for drugs.

two brothers, Alberto and Carlos Bravo, owners of an export-import business in Colombia. They were assisted by Griselda Blanco, who manufactured sophisticated smuggling devices and recruited couriers, and Bernardo Roldan, an expert in the manufacture of passports. This operational core continued to be active during the four year period covered by the indictment.[3] *See United States v. Mallah*, 503 F.2d 971, 983 (2d Cir. 1974), *cert. denied*, 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975).

Moreover the jury might properly find that several of the domestic underlings actively participated in the illegal drug operation during more than one of the three time segments. Among those were Cabrera, Botero, Caban, Ramos, Rincon, Hernandez, Diaz, Carmen Gill and Arturo Gonzalez. *See United States v. Stromberg*, 268 F.2d 256, 263 (2d Cir.), *cert. denied*, 361 U.S. 863, 80 S.Ct. 123, 4 L.Ed.2d 102 (1959).

There was proof that many of the participants were aware of each other's role in the organization. There were numerous meetings and telephone conversations among them and sales and transfers of drugs between them. *See United States v. Sperling*, 506 F.2d 1323, 1340 (2d Cir. 1974), *cert. denied*, 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975). There was also a consistent pattern of operation which included the use of similar smuggling devices, forged passports and a communications code. *See United States v. Leong*, 536 F.2d 993, 995 (2d Cir. 1976); *United States v. Sisca*, 503 F.2d 1337, 1343 (2d Cir.), *cert. denied*, 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974). Indeed a jury might consider the very size of the operation and the quantity of drugs involved to be indicative of a large scale, continuing conspiracy. *United States v. Magnano*, 543 F.2d 431, 435 (2d Cir. 1976).

Conspiracies are often agreements in flux, *United States v. Cirillo*, 468 F.2d 1233, 1239 (2d Cir. 1972), *cert. denied*, 410 U.S. 989, 93 S.Ct. 1501, 36 L.Ed.2d 188 (1973), and a single conspiracy is not transposed into a multiple one simply by lapse of time, *Braverman v. United States*, 317 U.S. 49, 52, 63 S.Ct. 99, 87 L.Ed. 23 (1942), change in membership, *United States v. Stromberg*, supra, 268 F.2d at 263–64, or a shifting emphasis in its locale of operations, *United States v. Finkelstein*, supra, 526 F.2d at 521.

The District Court's instructions on conspiracy, while succinct, were adequate. The Court charged that the government was required to prove the existence of but a single conspiracy and that each defendant's participation in this conspiracy must be determined individually by his own actions and declarations. It was not, as appellants assert, an "all or nothing" charge. *United States v. Bynum*, 485 F.2d 490, 497 (2d Cir. 1973), *vacated on other grounds*, 417 U.S. 903, 94 S.Ct. 2598, 41 L.Ed.2d 209 (1974). The District Judge's decision not to marshal the evidence was a discretionary one which avoided the risks of omission, over-enumeration, oversimplification and improper emphasis. *United States v. Bernstein*, 533 F.2d 775, 798–99 (2d Cir. 1976). While we have encouraged the marshaling of proofs in complicated conspiracy cases in order to highlight the differences between defendants, *see, e. g., United States v. Sisca*, supra, 503 F.2d at 1345; *United States v. Kelly*, 349 F.2d 720, 757 (2d Cir. 1965), *cert. denied*, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966), we are not prepared to hold that the District Judge's decision not to do so in this case was an improper exercise of his discretion.

In short, we find no error in the submission of the multiple conspiracy issue to the jury, nor in the manner in which it was submitted.

### Denial of Right to Speedy Trial

The indictment on which appellants were tried was a superseding indictment filed April 30, 1975. Four indictments preceded it, the original one being filed on May 11, 1974. Appellant Gonzalez was arrested by

---

3. There was testimony that, during the second time segment, some drugs were secured from other South American sources.

state authorities on September 17, 1974, indicted by a federal grand jury on October 4, 1974 and arraigned on the charges of that indictment on October 31, 1974. Appellant Roldan was arrested on October 4, 1974 on the same charges. Under Rule 4 of the Speedy Trial Rules of the District Court for the Southern District of New York as they then existed, the government was required to be ready for trial within six months from the day of arrest or the filing of charges, whichever was earlier. Absent such readiness, defendant was entitled to move for dismissal of the indictment. In computing the time within which the government was required to be ready, those periods occupied by the making and determination of pretrial motions were to be excluded. The District Court was also permitted by the rules to grant additional time when justified by exceptional circumstances of the case.

■ Although the government filed a notice of readiness on February 18, 1975, it did not furnish defendants with English translations of the wiretap tapes which were in Spanish until May 1, 1975. Relying principally on *United States v. Pollak*, 474 F.2d 828 (2d Cir. 1973), appellants Gonzalez and Roldan contend that the government was not in fact ready on February 18, 1975 because of the absence of the translations and that the indictments should have been dismissed as against them.

When a motion to dismiss was argued in the District Court on April 17, 1975, it was disclosed that the attorneys for Gonzalez and Roldan had never moved for either a bill of particulars or an inspection of the tapes, although the case had been set for trial on April 28, 1975. Under those circumstances, the District Court saw no reason to challenge the sincerity of the government's statement of readiness, and we find no error in its determination. In *United States v. Pollak, supra*, a discovery order was outstanding and had not been complied with at the time the government filed its statement of readiness. It is of interest to note, also, that when the dust cleared during the argument of the motion of April 17,

it was the attorney for appellant Roldan, rather than the prosecutor, who indicated an inability to proceed to trial on April 28.

In any event, the disposition of pretrial motions tolled the six-month limitation period of Rule 4 sufficiently to extend it beyond the May 1 date when the translation of the tapes had been completed. Assuming the validity of appellants' arguments concerning the need for the tape translations, the government was then ready for trial. *United States v. Strayhorn*, 471 F.2d 661, 667 (2d Cir. 1972).

■ Although slightly more than one year elapsed between the indictment of appellants Gonzalez and Roldan and their trial on the superseding indictment, this was not, under the circumstances of this case, a violation of their Sixth Amendment right to a speedy trial. This was a complex conspiracy case involving multiple defendants with the inevitable plethora of motions. *Barker v. Wingo*, 407 U.S. 514, 531, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Except for its initial request for a one month continuance to file its statement of readiness, the government never requested any adjournment. There was no extraordinary delay. *United States v. Infanti*, 474 F.2d 522, 527–28 (2d Cir. 1973).

■ Appellants Parra and Gomez, who merely adopted the above argument in their briefs, were indicted on May 11, 1974, and a period of seventeen months elapsed before they went to trial. However, as to them, also, we find no extraordinary delay, in view of the complex nature of the case and the crowded calendar in the Southern District.

### Double Jeopardy

Appellants Parra and Gomez were arrested in Texas in June, 1973 and subsequently indicted for illegal importation and possession of cocaine. They pled guilty and were sentenced on August 30, 1973. Appellant Botero was arrested on July 17, 1973 and was thereafter charged in a one count, one defendant indictment with possession of cocaine with intent to distribute. On June 27,

1974, Botero went to trial on this indictment and was convicted. These three appellants now contend that the double jeopardy clause of the Fifth Amendment barred their conviction under the April 30, 1975 conspiracy indictment because the single illegal acts of which they had been convicted were included within the scope of the conspiracy. We find no merit in this contention.

■ To support a claim of double jeopardy, it must appear that the offenses charged were in fact and in law the same. *United States v. Cala*, 521 F.2d 605, 607 (2d Cir. 1975). An indictment which charges a wide ranging conspiracy involving numerous illegal drug transactions differs substantially from one which charges only a single isolated transaction. *United States v. Ortega-Alvarez*, 506 F.2d 455, 457–58 (2d Cir.), *cert. denied*, 421 U.S. 910, 95 S.Ct. 1559, 43 L.Ed.2d 775 (1975).

### Identification of Roldan's Voice

■ Gustavo Hoffman, an interpretor who had listened to the tapes in this case at least twenty or thirty times, was asked to compare an unidentified voice on disputed tapes with voice samples on other tapes admittedly those of appellant Roldan. Roldan contends this was error, primarily because Hoffman had never had any direct personal conversations with him.

This argument goes to the weight of the evidence, not its admissibility. We have on several occasions held that voice identification may be adequate although the witness and the speaker have never personally met. *United States v. Albergo*, 539 F.2d 860, 864 (2d Cir. 1976); *United States v. Chiarizio*, 525 F.2d 289, 296 (2d Cir. 1975). *United States v. Borrone-Iglar*, 468 F.2d 419 (2d Cir.), *cert. denied*, 410 U.S. 927, 93 S.Ct. 1360, 35 L.Ed.2d 588 (1972), upon which appellant relies, does not hold to the contrary. The question is for the jury, if as reasonable men, they could find the claimed identification to be accurate. *United States v. Alper*, 449 F.2d 1223, 1229 (3d Cir. 1971), *cert. denied*, 405 U.S. 988, 92 S.Ct. 1248, 31 L.Ed.2d 453 (1972).

■ We see no prejudicial error in the District Court's volunteered identification of Roldan's voice on a non-incriminating tape, where there was no real dispute concerning the fact that it was Roldan's voice.

### Roldan's Post-Arrest Statements

Following Roldan's arrest and prior to his arraignment, he was questioned by Assistant United States Attorney James Nesland. Although appellant contends that his statement was taken in violation of his constitutional rights, he made no pretrial motion to suppress and may well have waived his right to do so. *United States v. Rollins*, 522 F.2d 160, 165 (2d Cir. 1975), *cert. denied*, 424 U.S. 918, 96 S.Ct. 1122, 47 L.Ed.2d 324 (1976). The District Judge, nonetheless, permitted the motion to be made during the trial and held that Roldan had been fully advised of his *Miranda* rights, understood them and voluntarily furnished the information now complained of in the absence of counsel.

■ Appellant asserts error because of Mr. Nesland's admission that he had possibly told Roldan he could get 15 years on each count. While we disapprove of the mention of a possible lengthy sentence as an inducement to a defendant to cooperate with an interrogator, *United States v. Duvall*, 537 F.2d 15, 24–25 (2d Cir. 1976), *cert. denied*, 426 U.S. 950, 96 S.Ct. 3173, 49 L.Ed.2d 1188, in view of Mr. Nesland's undisputed testimony that he did not suggest the possibility of such a sentence in this case if Roldan did not cooperate, we do not think that reversal is mandated. Mr. Roldan's statement gives no indication of having been made under coercion or duress. He confessed to nothing and admitted no obviously illegal acts. While it would have been better had there been no mention of possible sentences, we do not feel compelled in this instance to reject Judge Cannella's finding that Roldan voluntarily participated in his conversation with Nesland.

■ Of course, a defendant, properly informed of his *Miranda* rights, may validly waive his right to have counsel present.

*United States v. Floyd*, 496 F.2d 982, 988–89 (2d Cir.), *cert. denied*, 419 U.S. 1009, 95 S.Ct. 654, 42 L.Ed.2d 664 (1974).

 Although no defendants objected at the time, several of them now contend that because Mr. Nesland was an Assistant United States Attorney, it was improper for him to testify, even though he did not prosecute. Except where absolutely essential, a lawyer participating in a case should not testify on behalf of his client; and this rule is applicable to United States Attorneys and their assistants, *United States v. Torres*, 503 F.2d 1120 (2d Cir. 1974).[4] However, while we do not encourage testimony by any member of a United States Attorney's staff, we would not go so far as to disqualify such person as a witness in a case in which he plays no other role. *See United States v. Pepe*, 247 F.2d 838, 844 (2d Cir. 1957). Mr. Nesland appeared in this trial only as a witness. Had appellants voiced timely objection, perhaps a less controversial one could have been found. Under the circumstances, there is no merit to appellants' present claim of error.

### Prosecutorial Misconduct

It is not at all unusual that, during the course of a lengthy, multi-defendant trial, statements are made by counsel which would not be selected as models for a manual on trial procedure. This case is no exception. However, a thorough review of appellants' complaints satisfies us that no comments by the prosecutor were so prejudiciously improper as to deprive appellants of a fair trial.

 The prosecutor, who would argue the merits of the government's case, must sometimes walk a narrow line to avoid indirect reference to the defendant's failure to testify. No matter how delicately worded, a summation which points to the strength of the government's proof, points inevitably, albeit silently, to the weakness of the defendant's. However, unless a prosecutor's comments are of such a nature that a

jury would naturally and necessarily construe them to be directed to the failure of the defendant to testify, they are not prejudiciously unfair. *United States ex rel. Leak v. Follette*, 418 F.2d 1266, 1269 (2d Cir. 1969), *cert. denied*, 397 U.S. 1050, 90 S.Ct. 1388, 25 L.Ed.2d 665 (1970).

 Thus, a prosecutor is entitled to stress the credibility and lack of contradiction of the government's witnesses where possible contradictory testimony was available from witnesses other than the defendant himself. *United States v. Lipton*, 467 F.2d 1161, 1168 (2d Cir. 1972), *cert. denied*, 410 U.S. 927, 93 S.Ct. 1358, 35 L.Ed.2d 587 (1973). Moreover, arguments advanced by the defendant or by counsel on his behalf may be responded to by government counsel. *United States v. Isaacs*, 493 F.2d 1124, 1164 (7th Cir.), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146 (1974); *United States v. Deutsch*, 451 F.2d 98, 117 (2d Cir. 1971), *cert. denied*, 404 U.S. 1019, 92 S.Ct. 682 (1972). Because the prosecutor's remarks in this case were substantially of the above nature, and because the District Judge carefully limited their scope with proper precautionary instructions, we find no prejudicial error.

 We likewise find no prejudicial impropriety in the prosecutor's comments concerning the size of the conspiracy, the tremendous quantity of drugs involved and the community need for enforcement of the laws which Congress had passed to meet the drug problem. *United States v. Wilner*, 523 F.2d 68, 73–74 (2d Cir. 1975); *United States v. Ramos*, 268 F.2d 878, 880 (2d Cir. 1959); *cf. United States v. Jones*, 415 F.2d 753, 754–55 (5th Cir.), *cert. denied*, 386 U.S. 948, 90 S.Ct. 390, 24 L.Ed.2d 251 (1969). Again the District Judge diligently responded to all objections of defense counsel, many of which had little merit.

 When the character and credibility of accomplice witnesses have been strenu-

---

4. In *Torres*, we held that sitting at the counsel table constituted such participation in the trial as would prevent the calling of the prosecutor unless all other sources of possible testimony had been exhausted.

ously attacked by defense counsel, responsive comment by the government is not forbidden. The prosecution may appropriately discuss the necessity of using unsavory witnesses and may attempt to bolster their testimony by reference to other evidence in the case. This does not constitute forbidden endorsement by the government of the accomplice's testimony. *United States v. Davis*, 487 F.2d 112, 124–25 (5th Cir. 1973), *cert. denied*, 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878 (1974).

We have reviewed appellants' other assertions of prosecutorial misconduct and find them to be without substance.

### Judicial Error

■ Appellants make numerous assertions of error in the Court's charge, all of which we find to be meritless. A statement that the defendant may rely on testimony brought out on cross-examination of government witnesses does not shift the burden of proof to the defendant, especially when it is given in the same breath with instructions that the burden of proof is on the government. *United States v. Muckenstrum*, 515 F.2d 568, 571 (5th Cir.), *cert. denied*, 423 U.S. 1032, 96 S.Ct. 564, 46 L.Ed.2d 406 (1975).

■ Illustrative examples have been used by judges from time immemorial to illustrate abstract legal concepts such as proximate cause and circumstantial evidence. We see no error in the District Court's comparison of the role played by a minor participant in a conspiracy to the minor role of a cymbal player in an orchestra. A minor participant in the orchestra of a conspiracy is as much a part of it as is the concert master. *See, e.g., United States v. Kahaner*, 317 F.2d 459, 468 n. 4 (2d Cir.), *cert. denied*, 375 U.S. 836, 84 S.Ct. 74, 11 L.Ed.2d 65 (1963).

We have already commented upon the Court's failure to marshal the evidence and appellants' contention that the District Court's charge on conspiracy was an "all or nothing" charge. We find no need to discuss appellants' other allegations of error, most of which are made for the first time in this Court. *See United States v. Jacquillon*, 469 F.2d 380, 386 (5th Cir. 1972), *cert. denied*, 410 U.S. 938, 93 S.Ct. 1400, 35 L.Ed.2d 604 (1975).

### Improper Sentencing

■ Following their conviction below, appellants Parra and Gomez were sentenced to ten years in prison. Relying upon 18 U.S.C. § 3568,[5] they contend that the District Court erroneously failed to give them credit for time already served as a result of their prior convictions in Texas. Because, as we have already observed, the convictions involved were for entirely separate crimes, we find § 3568 to be inapplicable. *See Fontaine v. United States*, 434 F.2d 1310, 1311 (5th Cir. 1970).

■ Leon Velez, the only appellant who testified, contends that his sentence of five years imprisonment with a $5,000 committed fine and three years special parole was excessive, although well within the statutory limits. This argument goes hand in hand with appellant's continued assertions of innocence. The jury which heard the tapes of telephone conversations between Velez and other conspirators concerning "things", "papers" and "big ones", and listened to the testimony concerning his collecting and for-

5. "The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed. As used in this section, the term 'offense' means any criminal offense, other than an offense triable by court-martial, military commission, provost court, or other military tribunal, which is in violation of an Act of Congress and is triable in any court established by Act of Congress.

"If any such person shall be committed to a jail or other place of detention to await transportation to the place at which his sentence is to be served, his sentence shall commence to run from the date on which he is received at such jail or other place of detention.

"No sentence shall prescribe any other method of computing the term." 18 U.S.C. § 3568.

warding of money to the Bravo brothers in Colombia, rejected his contentions of innocence. The terms of appellant's sentence were discretionary with the trial judge, who also had the benefit of the government's proof. *United States v. Driscoll*, 496 F.2d 252, 253–54 (2d Cir. 1974).

 Although there were some inaccuracies in the probation report, these were corrected on the record prior to the imposition of sentence; and the District Judge stated that he would disregard them. There is no indication that he did not do so. We see no reason to disturb the sentence he imposed. *See United States v. Herndon*, 525 F.2d 208, 210 (2d Cir. 1975).

### The Right of Confrontation

Despite the District Court's finding that the evidence linking appellant Sarmiento to the conspiracy was overwhelming, Sarmiento seeks a reversal under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). On cross-examination by counsel for one of the defendants tried in absentia, a police officer testified that the absent defendant had told him that the Bravos, Roldan and "others" were active in the narcotics business. He was then asked to identify the "others".

Although counsel for Sarmiento had been alerted that his client would be named as one of the "others" if this information was sought, he voiced no objection to the question. When, as anticipated, the answer included his client, he promptly moved for a mistrial because his client had been denied the right of confrontation. The motion was denied, and appropriate instructions to disregard the answer were given.

 We think that the application of the rule of *Bruton* to the peculiar facts of this case would be most inappropriate. When a defendant has been made fully aware of the response which a question is bound to elicit, he should object when the question is asked, rather than delay with the hope of inviting error and laying the foundation for a mistrial. *Henry v. Mississippi*, 379 U.S. 443, 451, 85 S.Ct. 564, 13

L.Ed.2d 408 (1965); *Brennan v. United States*, 240 F.2d 253, 262 (8th Cir.), *cert. denied*, 353 U.S. 931, 77 S.Ct. 718, 1 L.Ed.2d 723 (1957); *Daniel v. United States*, 268 F.2d 849, 852 (5th Cir. 1959). Any other rule would put the prosecution at the mercy of the defense in a multidefendant trial.

 In any event, we think the answer complained of was not so vitally important to the government's case that its prejudicial effects survived the District Court's careful admonitions. *United States v. Wingate*, 520 F.2d 309, 313 (2d Cir. 1975), *cert. denied*, 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1976); *United States v. Catalano*, 491 F.2d 268, 273 (2d Cir.), *cert. denied*, 419 U.S. 825, 95 S.Ct. 42, 42 L.Ed.2d 48 (1974).

### Statements of Co-Conspirators

 The contention of appellant Gonzalez that his conviction was secured through improperly admitted hearsay evidence is frivolous. Statements of co-conspirators during the course of and in furtherance of a conspiracy are not hearsay. Federal Rules of Evidence, Rule 801(d)(2)(E); *United States v. Manarite*, 448 F.2d 583, 590 (2d Cir.), *cert. denied*, 404 U.S. 947, 92 S.Ct. 298, 30 L.Ed.2d 264 (1971). There was ample other evidence, including appellant's frequent participation in the coded telephone conversations, to establish his participation in the conspiracy. *See United States v. Sisca, supra*, 503 F.2d at 1343.

### Illegal Search and Seizure

We come now to the troublesome portion of this appeal. Once again, defendants who have been convicted of a serious crime have run for refuge to the exclusionary rule; once again, we are obliged to reverse their conviction. A substantial portion of the evidence against appellants Carmen Gill and Libardo Gill was uncovered during a search of their apartment. Although this search was conducted pursuant to a warrant issued by a justice of the New York State Supreme Court, if it did not comply with Fourth Amendment standards, the exclusionary rule is applicable "regardless of

the presence or absence of a warrant and the good or bad faith of the police officers". *United States v. Karathanos*, 531 F.2d 26, 33 (2d Cir.), *cert. denied*, —— U.S. ——, 96 S.Ct. 3221, 49 L.Ed.2d 1217 (1976). We find a lack of such compliance in this case.

The story of this disputed search is recounted in detail in the decision of Judge Cannella denying appellants' motion to suppress, which is reported at *United States v. Bravo*, 403 F.Supp. 297 (D.C.). Briefly summarized, it shows that when two police officers visited the Gills' apartment in connection with an unrelated investigation, they observed two partially smoked marijuana cigarettes and some currency on a table. They promptly placed the Gills under arrest. Thereupon, one of the officers proceeded to search the apartment, as a security check to see if anyone else was present who might threaten their safety or destroy evidence. Judge Cannella found that this search was made without sufficient justification. 403 F.Supp. at 302–03. During the course of the search, the officer discovered two shopping bags containing bricks of marijuana and an open leather bag containing loose marijuana and plastic bags filled with white powder. Following this discovery, appellant Carmen Gill offered a bribe to one of the officers, during the course of which she disclosed the presence of a substantial sum of money in a shoe box on a closet shelf. Additional bribe offers, totaling $21,000, followed.

Judge Cannella held that, because the search was unjustified, the evidence concerning the three bags of drugs could not be used as a basis for the issuance of the search warrant. He concluded, nonetheless, that there was sufficient evidence from untainted independent sources to justify the issuance of the warrant; viz., the marijuana and money observed on the officers' original entry and the offered bribes.

■ We find most persuasive appellants' argument that the proposed bribes cannot be considered an independent

source. The amount of the bribes and the fact that they were not offered until after the discovery of the drugs in the kitchen, indicates quite clearly that they were not prompted solely by the two marijuana butts and the undescribed sum of money on the living room table.

■ Moreover, the warrant which was issued by Justice Roberts directed the seizure of "2 shopping bags of marijuana and 1 bag containing heroin or cocaine".[6] The command to seize these specifically named items could have resulted only from their observation by the police officers during their unlawful search. Without reference to these two items in the warrant application, there would have been no reference to them in the warrant; and without such reference in the warrant, it would have been too broad to withstand attack. *United States v. Dzialak*, 441 F.2d 212, 216 (2d Cir.), *cert. denied*, 404 U.S. 883, 92 S.Ct. 218, 30 L.Ed.2d 165 (1971). We need not decide whether the untainted contents of the application would have been sufficient to sustain a warrant other than the one which was issued; we do hold that they were insufficient to sustain the one that was.

Judge Cardozo's ill-starred constable has blundered once again.[7] The conviction of appellants Libardo Gill and Carmen Gill must be reversed.

■ Appellant Sarmiento's attempt to secure a reversal of his conviction via the same route as the Gills will not be as successful. His motion to suppress was untimely. *See United States v. Rollins*, 522 F.2d 160, 165 (2d Cir. 1975), *cert. denied*, 424 U.S. 918, 96 S.Ct. 1122, 47 L.Ed.2d 324 (1976); Fed.R.Crim.P. 12(b), (c), (f). Moreover, the affidavit of his attorney, submitted in support of the motion to suppress, failed to demonstrate that Sarmiento had standing to complain of the search. *See United States v. Tortorello*, 533 F.2d 809 (2d Cir. 1976).

---

**6.** The warrant did not direct the seizure of "narcotics"; that generic term was specifically excised from the printed form.

**7.** *People v. Defore*, 242 N.Y. 13, 21 (1926).

### Conclusion

We have carefully reviewed all of the remaining contentions made by appellants and find them to be without merit. We therefore affirm the convictions of all appellants except Libardo Gill and Carmen Gill. As to them, we reverse and remand to the District Court for a new trial.