UNITED STATES of America, Plaintiff,

v.

Simon ABCASIS, a/k/a "Hacham,"
Ralph Abcasis and Rebecca
Abcasis, Defendants.

No. 91–CR–379 (DRH).

United States District Court,
E.D. New York.

Jan. 28, 1992.

Andrew J. Maloney, U.S. Atty. by Eric Friedberg, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y., for U.S.

Warren L. Feldman, Rogers & Wells, New York City (court-appointed), for Ralph Abcasis.

Martin Goldberg, Franklin Square, N.Y., for Rebecca Abcasis.

DePerris & Meyer, New York City, for Simon Abcasis.

## MEMORANDUM AND ORDER

HURLEY, District Judge.

This case is before the Court to decide numerous pre-trial motions submitted by the three remaining defendants[1] in the above-captioned prosecution. Counts 1 and 2 of the superseding indictment charge defendants Simon Abcasis, Ralph Abcasis, and Rebecca Abcasis, (collectively, the "De-fendants") with conspiring to and attempting to import heroin into the United States in violation of 21 U.S.C. § 952(a); Count 3 charges Ralph Abcasis with using and carrying a .380 semi-automatic pistol in connection with the crimes charged in Counts 1 and 2, in violation of 18 U.S.C. §§ 924(c); Counts 4 and 5 charge Ralph Abcasis with distributing heroin in violation of 21 U.S.C. §§ 841(a) and (b)(1)(C); and Count 6 charges Rebecca Abcasis with using the telephone to further the above-referenced heroin importation conspiracy in violation of 21 U.S.C. §§ 843(b) and (c).

Defendants Simon and Rebecca Abcasis join in Ralph Abcasis' motions for the following relief: an order declaring Federal Rules of Criminal Procedure 12.3(a)(1) and (2) unconstitutional both on their face and as applied to defendants; and an order permitting Defendants to inspect the grand jury minutes. Rebecca Abcasis joins in Ralph Abcasis' motion for an order permitting Defendants to have an expert inspect the original body wire tape recordings. Ralph Abcasis joins in Rebecca's motion to permit defense counsel to interview the confidential informant prior to trial. Finally, Ralph and Simon Abcasis move for discovery of the government files of the cases in which they were informants as well as their "informant files."

Ralph Abcasis also seeks the following relief on his own behalf: an order suppressing his post-arrest statements and the fruits derived therefrom as taken in violation of his constitutional rights; an order suppressing physical evidence and all the fruits derived therefrom as obtained in violation of his constitutional rights; and severance of Counts 4 and 5 of the Superseding Indictment.

Rebecca Abcasis seeks an order for a severance from her co-defendants. Simon Abcasis seeks an order for a severance from Ralph Abcasis.

Finally, the government moves for an *in limine* exclusion of Defendants' anticipated defense of public authority and has expressed its intention to file a motion pursu-

---

1. Kevin Shalicar has pled guilty to a superseding information.

ant to Federal Rules of Evidence 404(b) to admit certain evidence.

## FACTUAL BACKGROUND

The Court will limit discussion of the factual background to those facts necessary to decide the motions at issue. Inasmuch as the remainder of the outstanding motions require a factual determination which cannot be made from the papers alone, the Court will conduct a hearing on February 18, 1991 at 10:00 A.M.

According to the government's papers, for a period of time prior to April, 1990, Ralph and Simon Abcasis were registered informants for the New York Drug Enforcement Task Force. In April 1990, their status as informants was officially terminated. In or about September 1990, the Drug Enforcement Administration (the "DEA") received intelligence information that Ralph and Simon Abcasis were planning a heroin importation into the United States. The DEA thus initiated an investigation of Simon and Ralph Abcasis in or about February 1991 and continued it through April 5, 1991.

The investigation apparently revealed that Defendants and Kevin Shalicar enlisted a confidential informant ("CI–1") to assist them in importing 1400 and 2100 grams of heroin from Thailand into the United States. According to the plan formulated by Defendants and Shalicar, a courier, David Mohammed Givenchi, was to travel to Thailand with CI–1. CI–1 would then purchase the heroin, secrete it in a suitcase, and give the suitcase to Givenchi. Givenchi would return to the United States with the suitcase and deliver the heroin to the Abcasis and Shalicar. CI–1 led Defendants to believe that he would fly from Thailand to Canada with an additional 250 grams of heroin. (In reality, CI–1 was not to bring any heroin back to the United States.) Ralph and Simon Abcasis agreed to have CI–1 smuggled into the United States from Canada.

On or about March 8, 1991, Givenchi left for Thailand. CI–1 followed about two days later. Over the next two week period, CI–1 and Givenchi allegedly had numerous conversations with Defendants and Shalicar regarding the fact that Defendants had not given CI–1 enough money to purchase the heroin. Ultimately, Ralph and Simon Abcasis provided Shalicar with an additional sum of money which he sent via Federal Express to CI–1.

As of March 24 and 25, 1991, CI–1 and Givenchi were in Thailand, at Defendants' behest, attempting to purchase the heroin. According to the government, on March 25, CI–1 told Ralph Abcasis that he would be arriving in Toronto, Canada on March 27 or 28 and that Givenchi would be arriving in the United States by March 30.

On or about March 25, Simon and Ralph Abcasis called two of their former controlling officers, Sergeant Frank Colavito and Detective Gary Anderson of the New York Drug Enforcement Task Force (the "NYDETF"). They allegedly told the officers, in a series of communications, that CI–1 would be entering Canada between March 27 and 28 with 3 and 4 kilograms of heroin. The government contends that the Abcasis did not mention Givenchi, nor did they mention Shalicar's participation in the scheme.

By March 28, an undercover Thai police officer had purchased 1400 grams of heroin with Defendants' money. CI–1 then delivered the heroin to Givenchi, as planned. On March 28, Givenchi attempted to leave Thailand but was arrested for attempting to export the 1400 grams of heroin. CI–1 left Thailand for the United States on the same day. The following week, Ralph Abcasis again called the NYDETF officers and informed them of what he claimed was CI–1's new anticipated arrival date, but according to the government did not mention Givenchi or Shalicar.

The government intends to prove that Defendants never received authorization to engage in any narcotics-related activity. Defendants apparently are prepared to testify that they had multiple contacts with NYDETF agents and received actual authorization to engage in the charged conduct. Accordingly, Defendants may rely on a defense of public authority.

## DISCUSSION

### A. The Constitutionality of Rule 12.3(a)(1)

Defendants assert that Rule 12.3(a)(1), which prescribes that a defendant relying on an authorization defense provide pre-trial notice to the government, violates the fifth amendment's guarantee against self-incrimination, both on its face and as applied to Defendants. Defendants assert that the notice provision will "forge links in a chain of facts imperiling [the accused] with conviction of a federal crime." Defendant Ralph Abcasis' Memo of Law at 6, *citing Hoffman v. United States*, 341 U.S. 479, 488, 71 S.Ct. 814, 819, 95 L.Ed. 1118 (1951). Contrary to defendants' contention, the Court finds that 12.3(a)(1) is constitutional, both on its face, and as applied to defendants.

Rule 12.3(a)(1) provides that:

"[a] defendant intending to claim a defense of actual or believed exercise of public authority on behalf of a law enforcement or Federal intelligence agency at the time of the alleged offense shall ... serve upon the attorney for the government a written notice of such intention.... Such notice shall identify the law enforcement or Federal intelligence agency and any member of such agency on behalf of which and the period of time in which the defendant claims the actual or believed exercise of public authority occurred...."

Before turning to the merits of Defendants' contention, the Court notes that it is a well-established principle of jurisprudence that "federal statutes are to be construed so as to avoid serious doubts as to their constitutionality." *Communication Workers of America v. Beck*, 487 U.S. 735, 762, 108 S.Ct. 2641, 2657, 101 L.Ed.2d 634 (1988) (citations omitted). When presented with such doubts, "the Court will first determine whether it is fairly possible to interpret the statute in a manner that renders it constitutionally valid." *Id.* (citations omitted). Further, the burden of showing that a statute is unconstitutional is on the challenging party. *New York State Club Ass'n v. City of New York*, 487 U.S. 1, 17, 108 S.Ct. 2225, 2236, 101 L.Ed.2d 1 (1988). With these principles in mind, the Court turns to the constitutionality of Federal Rule of Criminal Procedure 12.3(a)(1).

### (i) The Court Finds That Williams v. Florida Is Controlling

The Court finds that for the purpose of constitutional analysis, Federal Rule of Criminal Procedure 12.1 is analogous to 12.3, the notice of alibi provision. 12.1 provides for pretrial notice to the government of the defendant's intention to offer a defense of alibi. Such notice must state the specific place at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom the defendant intends to rely to establish the alibi. This mandate resembles that of Rule 12.3(a)(1), which calls for notice of a defendant's intention to offer an authorization defense, including an identification of the law enforcement agency and the relevant time period of the authorization. Further, both 12.3 and 12.1 are intended to prevent unfair surprise and allow the government to adequately prepare for trial. 8 Moore's Federal Practice, Original Committee Note to Rule 12.3, ¶ 12.3.01[2] (2d ed. 1991).

Because of the similarity of these two provisions, the Court finds that *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), which addressed the constitutionality of a Florida notice-of-alibi provision that paralleled Rule 12.1, is controlling. In *Williams*, the Court found that notice of an alibi defense does not violate the fifth amendment. *Id.* at 83, 90 S.Ct. at 1896. The Court in *Williams* offered several rationales for its decision, all of which are equally relevant to this case.

First, the Court noted that there is nothing incriminatory about giving *notice* of a defense to be offered at trial. The pressures that bear on a defendant's pretrial decision to offer a defense and provide notice are not unlike those that bear on his decision to offer the defense at trial. *Id.* at 85, 90 S.Ct. at 1898. These pressures, whether they occur in advance of trial or at trial, do not violate the fifth amendment. *Id.* Thus, it is of no consequence that, as

Defendants contend, Rule 12.3 notice requires Defendants to admit to the "actus reus" of the crime in advance of trial: this same admission would be necessitated at trial by a decision to assert an authorization defense; the notice is merely an acceleration of the admission, and under *Williams*, such an acceleration is not constitutionally infirm.

Second, the Court in *Williams* relied on the fact that there is nothing "compelled", about the assertion of an alibi defense because the defendant is under no compulsion to pursue it. *Id.* at 84, 90 S.Ct. at 1897. *See* U.S. Const.Amend. V. Similarly, Defendants in this case are not compelled to pursue an authorization defense. Moreover, pursuant to Rule 12.3(e), if defendants offer the government notice of the defense and then decide not to pursue it at trial, evidence of the notice offered is not admissible. Because Rule 12.3 does not compel any particular testimony, and because the defendant may withdraw the defense without penalty to him, *Williams* dictates that 12.3(a)(1) does not run afoul of the fifth amendment. *See id.*[2]

It is also worth noting that the government has a strong interest in being apprised of a claimed authorization defense. As the government points out in its brief, it is possible for Defendants, in the closing moments of trial, to offer testimony that a particular law enforcement officer authorized their acts. In the absence of notice, the government might have difficulty rebutting that testimony. Thus, the unfair surprise to the government would be significant. In contrast, the cost to Defendants of providing notice in advance of trial is merely procedural.

### (ii) *Brooks v. Tennessee Is Inapposite*

In spite of Defendants' contention to the contrary, the Court finds that *Brooks v. Tennessee*, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972) is inapposite. In *Brooks*, the Supreme Court invalidated a Tennessee statute requiring a criminal defendant to testify, if at all, before any other witnesses for the defense. *Id.* at 606, 92 S.Ct. at 1892. The rule was designed to prevent the defendant from tailoring his testimony to that of his witnesses. *See id.* at 607, 92 S.Ct. at 1892.

Effectively, the Tennessee rule forced the defendant to decide whether to waive his rights against self-incrimination before he knew whether he could successfully mount his defense through other witnesses. The Court found that the rule thus compelled a defendant to testify when he might have chosen not to had he been able to evaluate the strength of the evidence. *Id.* at 612, 92 S.Ct. at 1895. This was deemed to cast too heavy burden on a defendant's right to testify. *Id.* at 610–11, 92 S.Ct. at 1894–95.

The Court in *Brooks* relied on two aspects of the statute at issue in deciding its constitutionality, and neither one is applicable to the case at bar: the first is that the statute restricted the defense in the planning of its case, *id.* at 612, 92 S.Ct. at 1895; and the second is that the statute effectively compelled a defendant's testimony in circumstances in which he might otherwise have chosen not to testify. *Id.* at 612, 92 S.Ct. at 1895. In contrast, Rule 12.3 does not lock defendants into a particular trial strategy, nor does it operate directly on a defendant's decision to testify. Thus, *Brooks* is factually distinguishable from this case and is not dispositive of a constitutional analysis of Rule 12.3.[3]

---

2. Defendants also argue that instead of pre-trial notice, the government could ask for a continuance at trial to prepare to rebut the authorization defense. However, as the Court in *Williams* noted, if a continuance is permissible under the fifth amendment, "then surely the same result may be accomplished through pre-trial discovery, ... avoiding the necessity of a disrupted trial." *Id.* at 86, 90 S.Ct. at 1898.

3. Additionally, contrary to Defendants' assertion in their papers, *Brooks* does not limit or alter the ruling in *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1969). Not only is *Brooks* factually distinguishable from *Williams*, as discussed in the text, but the *Brooks* decision does not even mention *Williams*, and *Williams* is cited as authoritative in *Wardius v. Oregon*, 412 U.S. 470, 471, 93 S.Ct. 2208, 2210, 37 L.Ed.2d 82 (1973), decided only one year after *Brooks*.

### B. The Constitutionality of Rule 12.-3(a)(2)

■ Defendants also contend that the discovery provisions enunciated in Rule 12.-3(a)(2) violate the due process clause of the fourteenth amendment, both on their face and as applied to defendants.

Rule 12.3(a)(1) provides that within 10 days after receiving a defendant's notice of his intent to pursue an authorization defense, and no less than 20 days before trial, the government must respond to the defendant's defense with an admission or a denial. Rule 12.3(a)(2) provides that when the government serves such a response, it may also serve upon the defendant a written demand for the names and addresses of the witnesses upon whom the defendant intends to rely in support of his defense. After the government receives the defendant's response, it is required to serve upon the defendant a written statement of the names and addresses of the witnesses upon whom the Government intends to rely in opposing the defense identified in the notice.

Defendants complain that these discovery provisions violate their due process rights to reciprocal discovery under *Wardius v. Oregon*, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973) because they allow the government to trigger discovery of witness names and addresses. For the reasons set forth below, the Court rejects Defendants' constitutional challenge under *Wardius*.

In *Wardius*, the Supreme Court held that an Oregon notice-of-alibi statute violated the due process clause of the fourteenth amendment because it denied the defendant reciprocal discovery rights. *Id.* at 472, 93 S.Ct. at 2211. However, the statute at issue in *Wardius* required the defendant to reveal witnesses in every case, but did not require the Government to disclose witnesses in any case. *Id.* at 472, 93 S.Ct. at 2211. *Wardius* thus stands for the proposition that under the due process clause, the government cannot obtain any discovery to which the defendant is not enti-

tled, and if the defense is compelled to disclose a list of witnesses, so must the government. *Id.* at 476, 93 S.Ct. at 2213.

Rule 12.3 does not provide the government with discovery to which the defendant is not entitled. It requires the government to admit or deny the authorization after the defendant identifies the agent[s] whom he claims authorized his acts. Rule 12.3(a)(1). Further, it provides for disclosure by the government whenever the defendant is required to make disclosure. Rule 12.3(a)(2). Thus, Rule 12.3 complies with the mandate set forth in *Wardius*.[4] Consequently, the Court finds that Rule 12.3(a)(2) does not violate the due process clause of the fourteenth amendment, either on its face, or as it applies to defendants.

### C. Defendants Must Comply With Rule 12.3

■ Because the Court finds Rule 12.3 constitutional, both on its face and as applied, the Court orders that defendants comply with its provisions should they choose to pursue an authorization defense. If defendant refuses to comply and the Court finds that such a refusal is "willful and motivated by a desire to obtain a tactical advantage," the Court may exercise its prerogative under 12.3(c) and exclude the testimony of any undisclosed witness offered in support of the defense. *See Taylor v. Illinois*, 484 U.S. 400, 415, 108 S.Ct. 646, 655, 98 L.Ed.2d 798 (1984) (compulsory process clause of sixth amendment does not bar preclusion of testimony of defense witness as sanction for violating discovery rule if discovery violations are found to be "willful and motivated by a desire to obtain a tactical advantage"). Moreover, failure to give notice might be the proper subject of cross-examination. *See Jenkins v. Anderson*, 447 U.S. 231, 236, 100 S.Ct. 2124, 2128, 65 L.Ed.2d 86 (1980) (recognizing that defendant who takes stand may be questioned about prior failure to make statement); 8 Moore's Federal Practice,

---

**4.** The Court also notes that there is nothing in the Constitution that entitles a defendant in a non-capital case to a list of prospective govern-

ment witnesses. *See United States v. Kimberlin*, 805 F.2d 210, 233 (7th Cir.1986); *United States v. Cannone*, 528 F.2d 296, 302 (2d Cir.1975).

Original Committee Note to Rule 12.3, ¶ 12.3.01[2] (2d ed 1991).

Defendants should comply with Rule 12.-3(a)(1) by February 4, 1992; the Government's admission or denial of the defense must be served on Defendants by February 10, 1992. At that time, the government may also serve upon Defendants a demand for the names and addresses of witnesses upon whom it plans to rely in support to this defense, pursuant to 12.3(a)(2). Defendants must respond and the government must reciprocate in accordance with the time frame established in the Rule.

Once the Government has received the information pursuant to 12.3(a)(1), it may renew its motion to exclude the authorization defense.[5]

### D. *Disclosure of the Grand Jury Minutes*

Defendants move for disclosure of the grand jury minutes pursuant to Federal Rule of Criminal Procedure 6(e)(3)(C)(ii). The Court rejects this motion for the reasons stated below.

Rule 6(e)(3)(C)(ii) provides for an exception to otherwise prohibited disclosure of grand jury minutes when a defendant shows that "grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." Defendants assert two grounds in support of disclosure of the grand jury minutes: first, that the government did not present certain allegedly exculpatory evidence to the grand jury, and second, that government used the testimony of a single hearsay witness.

 Under Rule 6(e)(3)(C)(ii), the movant has the burden of asserting that particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indict-

ment. *United States v. Massino*, 605 F.Supp. 1565, 1580 (S.D.N.Y.1985), *rev'd on other grounds*, 784 F.2d 153 (2d Cir.1986). There is a strong presumption of regularity in grand jury proceedings, and this presumption cannot be outweighed by conclusory or speculative allegations of misconduct. *United States v. Santoro*, 647 F.Supp. 153, 173 (E.D.N.Y.1986), *aff'd*, 880 F.2d 1319 (2d Cir.1989). Moreover, it is well settled that an indictment returned by a legally constituted grand jury, if valid on its face, is enough to call for a trial on the merits. *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956). Because of these considerations, as Defendants acknowledge, motions to inspect grand jury minutes should be granted sparingly. *United States v. Giovanelli*, 747 F.Supp. 875, 883 (S.D.N.Y.1989). With these principles in mind, the Court finds that Defendants' assertions with respect to allegedly exculpatory evidence and single witness hearsay testimony are not sufficient to meet their considerable burden of overcoming the presumption of regularity.

As to Defendants assertion that the government did not present certain allegedly exculpatory evidence to the grand jury, such evidence need not be presented unless it is "substantial" and "might reasonably be expected to lead the [grand] jury not to indict." *United States v. Ciambrone*, 601 F.2d 616, 623 (2d Cir.1979). The evidence that Defendants allege is exculpatory consists of a telex from the NY-DETF to the DEA in Canada. This telex reflects a communication allegedly made by Ralph Abcasis to the NYDETF to the effect that there would be an importation of narcotics from Thailand to Canada on March 28, 1991. It is not clear to the Court that this telex is exculpatory, nor is it clear that the government did not present it to the grand jury. However, even assuming this to be true, the Court concludes that Defendants have not met their burden of

---

**5.** The Court reserves its ruling on the Government's Motion to Exclude the Defense. However, the Court notes that Defendants' compliance with Rule 12.3(a)(1) will not necessarily constitute sufficient evidence proffered for the purposes of the Government's motion. *See United States v. Cameron*, 907 F.2d 1051, 1058 n.

10 (11th Cir.1990) (court held that even if defendant complied with Rule 12.2, which requires notice of insanity defense, if government sought to foreclose presentation of defense because of insufficient evidence, defendant might be required to proffer further specific evidence of insanity).

establishing that grounds may exist upon which to dismiss the indictment.

As to Defendants' argument that inspection of the grand jury minutes is necessitated by the alleged use of a single hearsay witness, the Second Circuit has instructed that an indictment valid on its face may not be challenged merely by an assertion that hearsay evidence was the basis for the indictment. *United States v. Schlesinger*, 598 F.2d 722, 726 (2d Cir.), *cert. denied*, 444 U.S. 880, 100 S.Ct. 168, 62 L.Ed.2d 109 (1979); *United States v. Blitz*, 533 F.2d 1329, 1344 (2d Cir.), *cert. denied*, 429 U.S. 819, 97 S.Ct. 65, 50 L.Ed.2d 79 (1976). *See United States v. Calandra*, 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974) ("an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence."); *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956).

Defendants merely assert that the indictment was "likely obtained" through the use of a single witness and that such indictments involve hearsay. The only support Defendants offer for this assertion is that this practice is common in the Southern and Eastern Districts of New York. Such speculation is insufficient to warrant intrusion into the secrecy of the grand jury process and cannot overcome the presumption of regularity. "Speculation and surmise as to what occurred [during the grand jury proceeding] ... is not a substitute for fact." *United States v. Wilson*, 565 F.Supp. 1416, 1436 (S.D.N.Y.1983). The Court thus rejects this basis for Defendants' motion for inspection of the grand jury minutes.

The Court finds that Defendants' assertions respecting the absence of allegedly exculpatory evidence and the use of a single hearsay witness at the grand jury proceeding fail to sustain their burden under Rule 6(e)(3)(c)(ii).[6] Defendants' motion for

inspection of the grand jury minutes is denied.

### E. *Ralph Abcasis' Motion To Suppress Post–Arrest Statements*

Ralph Abcasis moves to suppress his post-arrest statements on the ground that they were obtained in violation of his constitutional rights in two respects: first, he claims that he was not apprised of his rights to remain silent and to have an attorney present during questioning, pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and second, he maintains that the statements were the product of coercion and trickery on the part of the arresting officers. In contrast, the government claims that Ralph Abcasis was fully apprised of his Miranda rights and that his statements were the "voluntary product of a careful plan." Gov't's Memorandum in Opposition to Defendant's Pre–Trial Motions at 28.

The Court is thus presented with a factual dispute. In order to make a factual determination and decide this issue, the Court will conduct a hearing on February 18, 1991 at 10:00 A.M. At that hearing, the government will bear the burden of showing by a preponderance of the evidence that Ralph Abcasis knowingly and voluntarily waived his *Miranda* rights, *Colorado v. Connelly*, 479 U.S. 157, 158, 107 S.Ct. 515, 517, 93 L.Ed.2d 473 (1986) (citation omitted), and that there was no government overreaching. *Id.* at 170, 107 S.Ct. at 523.

### F. *Ralph Abcasis' Motion to Suppress Physical Evidence*

■ Ralph Abcasis also contends that his apartment was searched in violation of his fourth amendment rights. Thus, he has moved to suppress the evidence seized during the search and all fruits derived therefrom.

---

6. The Court is aware of the difficulty involved in a defendant showing that there was irregularity in the grand jury proceedings without access to the grand jury minutes. *See United States v. Santoro*, 647 F.Supp. 153, 173 (E.D.N.Y.1986), *aff'd*, 880 F.2d 1319 (2d Cir.1989) (*quoting* Morrillo, "Prosecutorial Power and the Grand Jury,"

N.Y.L.J. April 1, 1986). However, the Court defers to the extensive precedent in this area which dictates that conclusory or speculative allegations of misconduct do not outweigh the presumption of regularity. *See Santoro*, 647 F.Supp. at 173.

On April 4, 1991, Ralph Abcasis was arrested. Federal agents searched both his apartment and that of his girlfriend, and allegedly recovered a variety of items that the government intends to introduce at trial. There was no written consent to the search. However, the government maintains that Ralph Abcasis unqualifiedly consented to it. In contrast, Ralph Abcasis maintains that he consented to the search on the condition that he be present and that the agents did not agree to his presence, thus vitiating his consent.

Because of the factual dispute involved, the Court will resolve this question at the hearing to be held on February 18 at 10:00 A.M. At this hearing, the burden is on the government to show, by a preponderance of the evidence, that consent was indeed voluntarily given and was not the product of duress or coercion. *See e.g., United States v. Calvente*, 722 F.2d 1019, 1023 (2d Cir.1983), *cert. denied*, 471 U.S. 1021, 105 S.Ct. 2030, 85 L.Ed.2d 313 (1985). In determining whether or not consent to the search was given, the Court will consider the " 'totality of all the circumstances.' " *United States v. Puglisi*, 790 F.2d 240, 243 (2d Cir.), *cert. denied*, 479 U.S. 827, 107 S.Ct. 106, 93 L.Ed.2d 55 (1986) (*quoting Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973)).

## G. *Severance Motions*

### (i) Ralph Abcasis' severance motion

Ralph Abcasis argues that a severance of Counts 4 and 5 of the Superseding Indictment is warranted under Federal Rule of Criminal Procedure 8(a) and/or 14 because these two Counts bear no connection to the other four charges. Because this motion implicates the same issues raised by the government's motion to admit evidence pursuant to Federal Rules of Evidence 404(b), as well as the government's possible renewed motion *in limine* to exclude the defense of authorization, in order to preserve judicial resources, the Court reserves ruling on this motion.

### (ii) Rebecca Abcasis' Severance Motion

Rebecca Abcasis seeks an order for a severance from Simon and Ralph Abcasis. She argues that she is entitled to severance under Federal Rule of Criminal Procedure 14 in order to avoid prejudicial spill-over from anticipated evidence at trial of Ralph Abcasis' prior narcotics conviction. For the reasons stated below, her severance motion is denied.

Rule 14 provides that a court may order separate trials where a defendant is "prejudiced by a joinder of offenses or of defendants in an indictment...." To justify a severance, defendant must meet the substantial burden of demonstrating that " 'he would be so prejudiced by a joint trial that he would in effect be denied a constitutionally fair trial in a joint proceeding.' " *United States v. Persico*, 621 F.Supp. 842, 852 (S.D.N.Y.1985) (*quoting United States v. King*, 49 F.R.D. 51, 53 (S.D.N.Y.1970)). More specifically, the Defendants must show that the prejudice resulting from the joinder is substantial. *See United States v. Ricco*, 549 F.2d 264, 272 (2d Cir.), *cert. denied*, 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977) (citations omitted).

The Court has not yet ruled on the admissibility of Ralph Abcasis' prior narcotics conviction—an issue which arguably will be before the Court at a later date. However, even if this evidence is admitted, the Court will deny Ms. Abcasis' motion.

Courts in this circuit and elsewhere have generally not found the admission of evidence of prior criminal activity by one defendant to warrant substantial prejudice to a co-defendant. *See, e.g., United States v. Dalzatto*, 603 F.2d 642, 646 (7th Cir.), *cert. denied*, 444 U.S. 994, 100 S.Ct. 530, 62 L.Ed.2d 425 (1979); *United States v. Rosenwasser*, 550 F.2d 806, 808 (2d Cir.), *cert. denied*, 434 U.S. 825, 98 S.Ct. 73, 54 L.Ed.2d 83 (1977); *United States v. Bazinet*, 462 F.2d 982, 992 (8th Cir.), *cert. denied*, 409 U.S. 1010, 93 S.Ct. 453, 34 L.Ed.2d 303 (1972); *United States v. Egan*, 501 F.Supp. 1252 (S.D.N.Y.1980). In these cases, the trial court's limiting instructions have been held sufficient to preserve the co-defendant's right to a fair trial. *See,*

*e.g., Rosenwasser,* 550 F.2d at 880; *Egan,* 501 F.Supp. at 1262.

In the case at bar, the Court finds that Mrs. Abcasis has not made the requisite showing of substantial prejudice to warrant a severance. Similarly, Ms. Abcasis' vague proffer that her cultural background will prevent her from testifying in front of her husband and son is insufficient to justify a severance. *See United States v. Sasso,* 78 F.R.D. 292, 294 (S.D.N.Y.1977). Therefore, the Court denies this motion.

### (iii) Simon Abcasis' Severance Motion

Simon Abcasis seeks a severance from Ralph Abcasis in the event the latter's post-arrest statements are admitted into evidence. As mentioned, the Court will hold a hearing on February 18, 1991 at 10:00 A.M. to determine whether Ralph Abcasis' motion for the suppression of his post-arrest statements will be granted. Therefore, the Court reserves decision on Simon Abcasis' severance motion pending the outcome of the hearing. At that time, if necessary, the Court will apply the principles enunciated in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) to determine whether the admission of Ralph Abcasis' post-arrest statements will violate Simon Abcasis' sixth amendment right of confrontation.

### H. *Motions Without Objection*

The Defendants move for inspection of the original body wire tapes. The government does not object to such an inspection. The Court thus grants the motion for inspection and orders that it be executed under circumstances designed to preserve the integrity of the tapes.

Ralph and Simon Abcasis move for discovery of the government files of the cases in which they were informants as well as their "informant files." The government does not object to such discovery, with the qualification that it opposes the discovery of documents which do not relate to Ralph and Simon Abcasis' cooperation and which contain sensitive material regarding DEA operations and other informants. The Court grants this motion subject to the government's qualification. The Court also orders that the government secure any corresponding files from the Office of the Special Narcotics Prosecutor, subject to the same qualification.

Defendants seek to interview the informants prior to trial. The government has agreed to make the informants available prior to trial. Thus, the government does not contest that the informants' identities be disclosed to the defense. Under such circumstances, the Court orders that, consistent with its obligations under *United States v. Saa,* 859 F.2d 1067, 1074 (2d Cir.1988), *cert. denied,* 489 U.S. 1089, 109 S.Ct. 1555, 103 L.Ed.2d 858 (1989), the government make the informants available for Defendants to interview prior to trial.

### CONCLUSION

The Court will hold a hearing on February 18, 1991 at 10:00 A.M. on Ralph Abcasis' motion to suppress post-arrest statements and physical evidence seized pursuant to a search of his apartment.

The Court denies Defendants' motions for (a) an order declaring Federal Rule of Criminal Procedure 12.3 unconstitutional, both on its face and as applied; (b) an order permitting Defendants to inspect the grand jury minutes; and (c) an order for a severance for Rebecca Abcasis from her co-defendants.

The Court reserves decision on Simon Abcasis' motion for a severance from Ralph Abcasis pending the February 18 hearing. The Court reserves decision on Ralph Abcasis' severance motion pending the disposition of the government's 404(b) motion and the government's possible motion to exclude Defendants' authorization defense.

The Court grants the following of Defendants' motions: (a) the motion for inspection of the original body wire tapes; (b) discovery of Simon and Ralph Abcasis' "informant files" as well as the government files for the cases in which they were informants; and (c) the motion to make the informants available prior to trial in accordance with *United States v. Saa,* 859 F.2d

1067 (2d Cir.1988), *cert. denied,* 489 U.S. 1089, 109 S.Ct. 1555, 103 L.Ed.2d 858 (1989).

SO ORDERED.